Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391

Gregory S. Gilchrist (*pro hac vice)*
greg.gilchrist@versolaw.com
Ryan Bricker (*pro hac vice)*
ryan.bricker@versolaw.com
Paymaneh Parhami (*pro hac vice)*
paymaneh.parhami@versolaw.com
Kourtney Speer (*pro hac vice)*
kourtney.speer@versolaw.com
VERSO LAW GROUP LLP
565 Commercial Street, Fourth Floor
San Francisco, California 94111
Telephone: (415) 534-0495
Facsimile: (270) 518-5974
*Attorneys for Plaintiff*
*Patagonia, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATAGONIA, INC.<br><br>*Plaintiff*<br><br>v.<br><br>QUARTER INDUSTRIES, LTD.; ROB KATZ; and RIVERBEND WAREHOUSE, LLC d/b/a GOODBYERETAIL.COM, DISCOVERY OUTLET, and FREIGHT BRIDGE SOLUTIONS<br><br>*Defendants* | **CIVIL ACTION NO.:**<br><br>**COMPLAINT**<br><br>**Jury Trial Requested** |

1

Plaintiff Patagonia, Inc. ("Plaintiff" or "Patagonia"), by and through its undersigned counsel, alleges as follows against Quarter Industries, Ltd. ("QI"), Rob Katz ("Katz"), and Riverbend Warehouse LLC, d/b/a Goodbyeretail.com, Discovery Outlet, and Freight Bridge Solutions (collectively, "Riverbend"). QI, Katz and Riverbend are collectively hereinafter referred to as, "Defendants".

## NATURE OF THE ACTION

1.    This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims, arising from the infringement of the Patagonia IP (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Patagonia Products.

## JURISDICTION AND VENUE

2.    This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and

costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.	Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 301, N.Y.C.P.L.R. § 302(a)(1), N.Y.C.P.L.R. § 302(a)(2) and N.Y.C.P.L.R. § 302(a)(3), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derives substantial revenue from their business transactions in New York and/or otherwise avail itself of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York.

4.	Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district, is subject to personal jurisdiction in this judicial district, a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial district, and/or harm to Plaintiff has occurred in this district.

### PARTIES

5.	Patagonia is a corporation organized and existing under the laws of the State of California, with a principal place of business located at 259 West Santa Clara Street, Ventura, California 93001.

6.	Upon information and belief, Defendant QI is a company organized and existing under the laws of the State of New York, with a principal place of business at 645 West End Ave, Suite 2D, New York, NY 10025.

7.      Upon information and belief, Defendant Katz is an individual who resides at 645 West End Ave. Suite, 2D, New York, New York, 10025. Defendant Katz is the President and CEO of Defendant QI.

8.      Upon information and belief, Defendant Riverbend is a limited liability company organized and existing under the laws of Tennessee with a principal place of business at 2960 Barney's Ln NE, Cleveland, Tennessee, 37323.

9.      Upon information and belief, Defendant Riverbend also does business as (1) an ebay storefront under the name Goodbye Retail located at https://www.ebay.com/str/goodbyeretail ("Riverbend's eBay Store"); (2) a discount variety store with three locations throughout Tennessee under the name Discovery Outlet; and (3) a third-party trucking and logistics company under the name Freight Bridge Solutions.

## GENERAL ALLEGATIONS
### Plaintiff and Its Well Known Patagonia Brand, Patagonia IP and Patagonia Products

10.      Patagonia was founded in 1973 to design and sell climbing clothes and other active sportswear and has since been designing, developing, marketing and selling a wide range of high-quality apparel products and equipment, including t-shirts, hoodies, sweatshirts, and fleece, as well as technical products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running under the "PATAGONIA" brand name and trademark (the "Patagonia Wordmark") for more than forty years ("Patagonia Products") which are distributed through various channels of trade in the U.S. and abroad.

11.      Since 1973, Patagonia has used its signature logo on Patagonia Products which prominently features a sunset above a stylistic version of the mountain Monte Fitz Roy (similarly known as Cerro Chaltén or Mount Fitz Roy) located near the El Chaltén village in the southern

Patagonian Ice Field in Patagonia on the border of Argentina and Chile above the Patagonia Wordmark (the "P6 Logo"). An image of the P6 Logo appears below:



12.      Patagonia is renowned for producing high-quality, durable, and sustainable outdoor gear, emphasizing both functionality and environmental responsibility, with many pieces built to last for years.

13.      In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers used in conventional cotton growing, Patagonia began the exclusive use of organically grown cotton and has continued that use for more than twenty years.

14.      Patagonia was a founding member of the Fair Labor Association® in 1999, which is an independent multi-stakeholder verification and training organization that audits apparel factories.

15.      In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage other businesses to do the same. Today, more than 1,200 member companies have donated more than $150 million to more than 3,300 nonprofits through 1% For the Planet.

16.      Over the years, Patagonia has been recognized and honored for its business initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement Award," in 2012.

17. Also in 2012, Patagonia became one of California's first registered Benefit Corporations ("B-Corporation"), ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment.

18. In 2016, Patagonia pledged to donate all revenue from sales on Black Friday, donating $10 million to environmental grantees in response to customers' purchases on that day.

19. In 2018, Patagonia pledged an additional $10 million in grants to environmental groups in response to recent tax cuts given to businesses.

20. Over the course of two weeks in December 2019, Patagonia matched another $10 million in donations to environmental and other grassroots organizations.

21. Patagonia's owners recently donated their holdings in the company to support initiatives and innovations addressing climate change.

22. Additionally, since 1985 Patagonia has pledged 1% of sales to environmental groups to preserve and restore our natural environment, donating more than $100 million to date.

23. As a result, the Patagonia brand, Patagonia Products and the Patagonia IP are famous around the world for innovative apparel designs, quality products, and environmental and corporate responsibility.

24. While Patagonia gained significant common law trademark and other rights in the Patagonia IP (as defined *infra*) and Patagonia Products through use, advertising and promotion, Patagonia also protected its valuable rights by filing for and obtaining federal trademark registrations.

25. For example, Patagonia owns numerous U.S. Trademark Registrations in a wide variety of classes, including the following:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402/ Feb. 9, 1982 | Men's and Women's Clothing – Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear | 08/1974 |
| | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing – Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
| | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing – Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | 08/1974-1981 |
| | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| **PATAGONIA** | 1811334 / Dec. 14, 1993 | Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves | 08/1990 |
| **PATAGONIA** | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; providing information in the field of technical clothing and accessories for use in recreational, sporting and | 10/1995 |

7

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | | leisure activities; providing information in the field of existing and evolving environmental issues | |
| **PATAGONIA.COM** | 2392685 / Oct. 10, 2000 | On-line retail store and mail order services featuring technical clothing, footwear, and accessories; computer services in the nature of on-line information related to the environment and clothing | 10/1995 |
| **PATAGONIA** | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories | 06/1986 |
| **PATAGONIA** | 5491401 / June 12, 2018 | Reusable bottles sold empty; insulated containers for food or beverage for domestic use; cups, mugs and growlers | 09/2014 |
| **PATAGONIA** | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |

(collectively, the "Patagonia Marks"). True and correct copies of the registrations for the Patagonia Marks ("Patagonia Registrations") are attached hereto as **Exhibit A** and incorporated herein by reference.

26.    The Patagonia Marks are currently in use in commerce in connection with the Patagonia Products. The Patagonia Marks were first used in commerce on or before the dates of first use as reflected in the respective Patagonia Registrations attached hereto as **Exhibit A**.

8

27. In addition, Patagonia is also the owner of registered copyrights in and related to the Patagonia Products.

28. For example, Patagonia owns the U.S. copyright registration covering the P-6 Logo, U.S. Copyright Registration No. VA 1-801-788 ("P-6 Work"). True and correct copies of the U.S. copyright registration for the P-6 Work are attached hereto as **Exhibit B** and incorporated herein by reference.

29. The Patagonia Marks and the P-6 Work are hereinafter referred to as the "Patagonia IP".

30. Patagonia has spent substantial time, money, and effort building up and developing consumer recognition, awareness and goodwill in its Patagonia Products.

31. Patagonia's success is also due to its use of the highest quality materials and processes in making the Patagonia Products.

32. Additionally, Plaintiff owes a substantial amount of the success of the Patagonia Products to its consumers and word-of-mouth buzz that its consumers have generated.

33. Due to Plaintiff's efforts (including sustainability and social responsibility efforts), the quality of its Patagonia brand and Patagonia Products and the word-of-mouth buzz generated by its consumers, the Patagonia IP and Patagonia Products have become prominently placed in the minds of the public. Members of the public have become familiar with the Patagonia IP and Patagonia Products and have come to associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such associations.

34. Plaintiff has gone through great lengths to protect its interests in the Patagonia IP and Patagonia Products. No one other than Plaintiff is authorized to manufacture, import, export,

advertise, offer for sale or sell any goods utilizing the Patagonia IP without the express permission of Plaintiff.

### Defendants and Their Infringing and Counterfeiting Activities

35.    Particularly in light of Patagonia's success, the Patagonia Products and the reputation they have gained, Patagonia and its Patagonia Products have become targets for unscrupulous individuals and entities that wish to exploit the goodwill, reputation and fame that Patagonia has amassed in its Patagonia Products and Patagonia IP, and Patagonia investigates and enforces against such activities.

36.    Through Patagonia's investigative and enforcement efforts, Patagonia learned of Defendants' actions which vary and include, but are not limited to, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing the Patagonia IP and/or bearing marks and/or works that are confusingly and/or substantially similar to the Patagonia IP and/or which are identical or confusingly and/or substantially similar to the Patagonia Products (collectively referred to as the "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers.

37.    Defendants' Counterfeit Products are nearly identical to the Patagonia Products, only with minor variations that no ordinary consumer would recognize.

38.    On or about January 24, 2025, a customer brought a down sweater jacket bearing the Patagonia IP to the Patagonia retail store located in Boston. The customer informed the Patagonia retail store employees that the customer had purchased the jacket from a Chestnut Hill, Massachusetts location of Milton's, a retail chain. The customer complained that the product had a faulty zipper.

10

39.    Upon inspection of the jacket, the Patagonia retail store employees observed the inferior quality of the jacket, mislabeled sizing, improper tag placement and a faulty zipper. Representative images of the jacket appear below:





40.     Employees of the Patagonia retail store in Boston provided pictures of the down sweater jacket to Patagonia's internal brand protection team who confirmed the down sweater jacket to be a Counterfeit Product.

41.     Patagonia conducted a further investigation into the source of the Counterfeit Products and determined that on or about December 11, 2024, Defendants QI and Katz approached a retail store, Retail Therapy, LLC, d/b/a Frugal Fannie's (hereinafter, "FF") with an offer to sell FF approximately 3,000 units of Counterfeit Products described as, "Patagonia Men's Down Sweater[s]," which Defendants QI and Katz represented were, "1st Quality w/ labels" and which were located at Defendant QI and/or Katz's "Tennessee warehouse".

42.     Accordingly, upon information and belief, Katz participates in, aids and abets and controls the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products.

43.     On or about December 17, 2024, FF purchased approximately 1,800 units of the Counterfeit Products from Defendants QI and Katz for $40/unit.

44.     On or about December 19, 2024, FF sold approximately 96 units of the Counterfeit Products to Milton's for $65/unit.

45.     The corresponding Patagonia Product retails for approximately $279.00.

46.     Patagonia's investigation confirmed that FF and Milton's sold Counterfeit Products to consumers.

47.     Upon information and belief, Defendant Riverbend works with Defendants QI and Katz to manufacture, import, export, ship, store, advertise, market, promote, distribute, display, offer for sale and/or sell Counterfeit Products and stored, shipped and otherwise dealt in the Counterfeit Products shipped to FF.

48.    Upon Information and belief, on or about January 2025, a customer visited Riverbend's eBay Store and purchased a Counterfeit Product believing it to be a Patagonia Product.

49.    The customer's review on Riverbend's eBay Store stated, "I purchased this jacket but the pocket zipper was stuck so I took it to a Patagonia store to fix it. This is NOT a real Patagonia jacket.  It is a counterfeit.  Buyer beware. I want a refund." A true and correct screenshot of the customer's review of the Counterfeit Product on the Riverbend's eBay Store's storefront appears below:

> ⊖  **I purchased this jacket but the pocket zipper was stuck so I took it to a Patagonia store to fix it. This is NOT a real Patagonia jacket. It is a counterfeit. Buyer beware. I want a refund.**
> (Private listing)

50.    Defendants are not, and have never been, authorized by Patagonia or any of its authorized agents to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Patagonia Products or to use the Patagonia IP, or any marks or works that are confusingly and/or substantially similar to the Patagonia IP.

51.    By these actions (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Patagonia IP, and have used marks and/or artwork that are confusingly similar to, identical to, substantially similar to and/or constitute counterfeiting and/or infringement of one or more of the Patagonia IP in order to confuse consumers into believing that such Counterfeit Products are the Patagonia Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Plaintiff's adoption and use of the Patagonia IP, after

13

Plaintiff obtained federal registrations in the Patagonia IP, as alleged above, and after Plaintiff's Patagonia brand and Patagonia Products became well-known to the purchasing public.

52.     Prior to and contemporaneous with its counterfeiting and infringing actions alleged herein, Defendants had knowledge of Patagonia's ownership of the Patagonia IP, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Patagonia Products, and in bad faith adopted the Patagonia IP.

53.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Patagonia's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Patagonia, the Patagonia IP and the Patagonia Products.

54.     Defendants' dealings in Counterfeit Products, as alleged herein, have caused, and will continue to cause, confusion, mistake, economic loss, and has and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Patagonia, thereby damaging Patagonia.

55.     By engaging in these actions, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited one or more of the Patagonia IP, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

56.     Unless enjoined, Defendants will continue to cause irreparable harm to Patagonia.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C.**
**§ 1117(b)-(c)/Lanham Act § 35]**

57.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58.    Plaintiff is the exclusive owner of all rights and title to the Patagonia Marks.

59.    Plaintiff has continuously used the Patagonia Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit A**.

60.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Patagonia Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Patagonia Marks and/or used spurious designations that are identical with, or indistinguishable from, the Patagonia Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

61.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Patagonia Marks through its participation in such activities.

62.    Defendants have applied its reproductions, counterfeits, copies and colorable imitations of the Patagonia Marks to packaging, point-of-purchase materials, promotions and/or

advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

63.     Defendants' unauthorized use of the Patagonia Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Patagonia Marks.

64.     Defendants' actions constitute willful counterfeiting of the Patagonia Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

65.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Patagonia Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Patagonia Marks.

66.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of

Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of good sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]

67.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68.    Plaintiff has continuously used the Patagonia Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit A**.

69.    Plaintiff, as owner of all rights, title and interest in and to the Patagonia Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

70.    Defendants were, at the time it engaged in its actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Patagonia Marks.

71.    Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Patagonia Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Patagonia Products and/or related products bearing Patagonia Marks into the stream of commerce.

72.    Defendants knowingly and intentionally used the Patagonia Marks, or marks that are identical or confusingly similar thereto, on or in connection with the manufacture, importation, exportation, advertisement, marketing, promotion, distribution, offering for sale and/or sale of

17

Infringing Products.

73.    Defendants' egregious and intentional use of the Patagonia Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Patagonia Products or are otherwise associated with, or authorized by, Plaintiff.

74.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Patagonia Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

75.    Defendants' continued, knowing, and intentional use of the Patagonia Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Patagonia Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

76.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Patagonia Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Patagonia Marks.

77.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages

18

obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

78.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.    Plaintiff, as the owner of all right, title and interest in and to the Patagonia Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

80.    The Patagonia Marks are inherently distinctive and/or have acquired distinctiveness.

81.    Defendants knowingly and willfully used in commerce marks that are identical or confusingly similar to Plaintiff's Patagonia Marks and/or affixed, applied and/or used other words, names, symbols or designs in connection with the promotion of Defendants' Infringing Products product and/or labeling designs that are identical or confusingly similar to, and constitute reproductions of the Patagonia Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are Patagonia Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of

confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Patagonia Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

82.    By using marks that are identical or confusingly similar to Plaintiff's Patagonia Marks, Defendants have traded off the extensive goodwill of Plaintiffs and their Patagonia Marks to induce customers to purchase Defendants' Infringing Products, and will continue to induce such customers to do the same. Such conduct has permitted, and will continue to permit, Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which they have amassed through their nationwide marketing, advertising, sales and consumer recognition.

83.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Patagonia Marks would cause confusion, mistake or deception among purchasers, users and the public.

84.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Patagonia brand, Patagonia Products and Patagonia Marks.

85.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Patagonia Products and by depriving Plaintiff of the value of its Patagonia Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the

Patagonia Marks.

86.      Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Trademark Dilution)**
**[15 U.S.C. § 1125(c)/Lanham Act § 43(a)]**

87.      Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

88.      Plaintiff, as the owner of all common law right, title, and interest in and to the Patagonia Marks, has standing to maintain an action for trademark dilution under the Lanham Act § 43(c), 15 U.S.C. § 1125(c).

89.      Plaintiff's Patagonia Marks, individually and collectively, are inherently distinctive and/or have acquired distinctiveness, and are famous.

90.      Without Plaintiff's authorization or consent, and with knowledge of Plaintiff's well-known and prior rights in its Patagonia Marks, and long after the Patagonia Marks became famous, Defendants knowingly used marks that are identical and/or confusingly similar to the Patagonia Marks in connection with Defendants' Infringing Products, in or affecting interstate commerce.

91.      Defendants' intentional use of marks that are identical and/or confusingly similar to the Patagonia Marks is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of Defendants' Infringing Products, and is likely to deceive

21

consumers, the public and the trade into believing that the same originate from, are associated with or are otherwise authorized by Patagonia, thereby allowing Defendants to make substantial profits and gains to which it is not entitled in law or equity.

92. Defendants' actions, as set forth herein, have diluted, and will continue to dilute, Plaintiff's famous Patagonia Marks, and are likely to impair the distinctiveness, strength and value of the Patagonia Marks, thereby injuring Plaintiff's business(es) and reputation.

93. Defendants' unauthorized use of marks that are identical and/or confusingly similar to the Patagonia Marks was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with the deliberate intention to unfairly benefit from the incalculable goodwill inherent in Plaintiff's famous Patagonia Marks.

94. Defendants' actions constitute willful dilution by blurring of Plaintiff's Patagonia Marks in violation of 15 U.S.C. § 1125(c).

95. Defendants' acts have caused substantial and irreparable injury and damage to Plaintiff and its valuable Patagonia Marks for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause damage to Plaintiff and its valuable Patagonia Marks in an amount as yet unknown but to be determined at trial.

96. Based on such conduct, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117(a), and 1118, and reasonable attorneys' fees and costs

22

**FIFTH CAUSE OF ACTION**
**(Federal Copyright Infringement)**
**[17 U.S.C. § 501(a)]**

97.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98.    Plaintiff is the exclusive owner of the P-6 Work.

99.    Defendants had actual notice of Plaintiff's exclusive rights in and to the P-6 Work.

100.    Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Patagonia Products and/or P-6 Work.

101.    Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the P-6 Work by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products which bear such P-6 Work, or artwork that is, at a minimum, substantially similar to the P-6 Work.

102.    Defendants' unlawful and willful actions as alleged herein constitute infringement of the P-6 Work, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such P-6 Work in violation of 17 U.S.C. § 501(a).

103.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

104. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendant's profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

105. Plaintiffs repeat and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

106. By using marks that are identical or confusingly similar to Plaintiff's Patagonia Marks on or in connection with Defendants' Infringing Products and/or the advertisement, marketing, promotion, and/or offering for sale of Defendants' Infringing Products, Defendants have traded off the extensive goodwill of Plaintiff and its Patagonia Marks and Patagonia Products to induce, and did induce and intends and will continue to induce, customers to purchase Defendants' Infringing Products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through their nationwide marketing, advertising, sales and consumer recognition.

107. Defendants' use of marks that are identical or confusingly similar to Plaintiff's Patagonia Marks was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Infringing Products.

108. Defendants knew, or by the exercise of reasonable care should have known, that their use of marks that are identical or confusingly similar to Plaintiff's Patagonia Marks on or in connection with Defendants' Infringing Products would cause confusion and mistake, or deceive

24

purchasers, users and the public.

109.   Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff and its competitive position while benefiting Defendants.

110.   As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of their Patagonia Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Patagonia Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

111.   As a result of Defendants' actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from its activities and exemplary or punitive damages for Defendants' intentional misconduct.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief as follow

A.   For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.   In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in

connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      An award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for Defendants' willful trademark infringement of Plaintiffs' federally registered Patagonia Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      An award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a), and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

E.      An award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for Defendants' willful trademark dilution under 15 U.S.C. §1125(c), and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

F.      For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement of the P-6 Work under 17 U.S.C. § 501(a)

G.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of Plaintiff's P-6 Work pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final

judgment;

H.    An award of damages to be proven at trial for common law unfair competition;

I.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    ii.    directly or indirectly infringing in any manner any of Plaintiff's Patagonia IP;

    iii.    using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Patagonia IP, to identify any goods or services not authorized by Plaintiff;

    iv.    using any of Plaintiff's Patagonia IP, or any other marks or artwork that are confusingly or substantially similar to the Patagonia IP, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    v.    using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by

27

Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xi. instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (x) above; and

J.        For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other

28

materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Patagonia IP, or bear any marks and/or artwork that are confusingly or substantially similar to the Patagonia IP;

K.    For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendant that infringe any of Plaintiff's Patagonia IP, or bear any marks and/or artwork that are confusingly or substantially similar to the Supercell IP pursuant to 15 U.S.C. § 1118;

L.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from its manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

M.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

N.    For Plaintiff's reasonable attorneys' fees;

O.    For all costs of suit; and

P.    For such other and further relief as the Court may deem just and equitable

## JURY DEMAND

Plaintiff respectfully demands a trial by jury.

Dated: April 9, 2025

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:  _Ashly E. Sands_

Ashly E. Sands (AS 7715)
asands@ipcounseors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone: (212) 292-539
Facsimile: (212) 292-5391

Gregory S. Gilchrist (*pro hac vice*)
greg.gilchrist@versolaw.com
Ryan Bricker (*pro hac vice*)
ryan.bricker@versolaw.com
Paymaneh Parhami (*pro hac vice*)
paymaneh.parhami@versolaw.com
Kourtney Speer (*pro hac vice*)
kourtney.speer@versolaw.com
VERSO LAW GROUP LLP
565 Commercial Street, Fourth
Floor
San Francisco, California 94111
Telephone: (415) 534-0495
Facsimile: (270) 518-5974
*Attorneys for Plaintiff*
*Patagonia, Inc.*